```
                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA

                         CASE NO. 17-20023-CIV-ZLOCH
                                 (13-20583-CR-ZLOCH)
                         MAGISTRATE JUDGE P.A. WHITE
```

JOSEPH AKINS OWANIKIN,

    Movant,

v.                                                               <u>REPORT</u>
                                                            <u>OF MAGISTRATE JUDGE</u>

UNITED STATES OF AMERICA,

    Respondent.

_____/

## I. Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his sentence entered after he pled guilty filing a false or fraudulent tax return in case number 13-20583-CR-ZLOCH.

In his pro se motion, the movant raised five claims. He contended that: (1) counsel was ineffective for failing to file a direct appeal after being directed to do so; (2) counsel was ineffective for failing to object to the government's refusal to agree to an additional one level reduction in his offense level based on acceptance of responsibility; (3) counsel was ineffective for failing to object to the enhancement for the number of victims; (4) counsel was ineffective for failing to investigate and object to the amount of loss; and (5) counsel was ineffective for failing to object to the mandatory victim restitution amount. It was determined that the movant's claim that counsel failed to file a direct appeal warranted an evidentiary hearing. Randee J. Golder, Esq., was appointed to represent the movant.

## II. Procedural History

On **August 8, 2013,** the movant was charged with ten counts of filing a false or fraudulent tax return. The movant was charged with filing ten false or fraudulent tax returns each seeking a rebate fo $7500. The movant was not arraigned until **July 2015**. The case was twice set for trial. A first change of plea hearing was continued on September 9, 2015, when the movant expressed his desire for more time to discuss the plea with his attorney. The movant subsequently expressed his desire to proceed to trial. The trial date was set for September 21, 2015.

On September 15, 2015, the court scheduled a second change of plea hearing for September 17, 2015. That hearing went forward and the movant entered his guilty plea to one count of filing a fraudulent tax return. On December 14, 2015, the movant was adjudicated guilty and sentenced to 48 months imprisonment. No appeal was filed.

The movant filed the instant motion to vacate on December 20, 2016.[1]

### III. Evidentiary Hearing

<u>Testimony at Evidentiary Hearing</u>

The movant testified that he met with counsel, Michael Spivack, prior to sentencing. During their meeting Spivack discussed his options after sentencing. According to the movant, Spivack advised him that he could either seek to cooperate with the government or appeal his sentence. The movant testified that he told Spivack that he wanted to appeal. At sentencing the movant's objections to the loss amount were overruled. The movant wanted to

---

[1] The government has argued that the instant motion is time barred. The government relies upon the date the motion was docketed on January 4, 2017. However, the motion was signed on December 20, 2016, less than one year from the date the movant's conviction became final. Thus the motion was timely filed.

appeal that issue and immediately after sentencing he told Spivack to appeal. The movant never met with the government after sentencing regarding cooperating. Spivack never met with him after sentencing despite several calls. The movant assumed that the notice of appeal had been filed.

On cross examination the movant testified that he only met with Spivack once or twice before the plea offer was made. He was initially unsure of entering a plea, but after further discussions with Spivack he decided to plead guilty. After sentencing, the movant understood that he could either appeal or cooperate because the government would not be interested in his cooperation if he was also appealing. He reiterated that Spivack did not meet with him after sentencing. He disagreed with any notes that may have indicated that he was interested in cooperating with the government and was adamant that he never attempted to cooperate or had any post sentencing discussions with Spivack about cooperating. When asked if any document might refresh his recollection, the movant was remained certain that he never met with Spivack after sentencing. When the prosecutor asked if the movant remembered the case agent testifying at his sentencing hearing he responded that the case agent did not testify at his sentencing but at a prior hearing. The government acknowledged that the movant was correct in his recollection.

Spivack has been an assistant federal public defender for fifteen years. He was previously in private practice doing commercial litigation and also was an assistant state attorney for almost 15 years. He was assigned to represent the movant after he was charged. At the first meeting with the movant Spivack reviewed the stages of a criminal proceeding. When Spivack was asked if the movant wanted to exercise his right to a trial, he responded "Well

we had it set for trial, but then I think he ended up pleading guilty." Spivack could not remember if it was an easy guilty plea, stating, "That, Judge, I can't remember. It was over three years ago." Spivack testified that he explained how the guidelines work as well as the minimum and maximum statutory penalties. When asked if the PSI had any adverse relevant conduct, Spivack responded that he would have to look at the PSI. He testified that he filed objections to the PSI's inclusion of certain conduct, but when asked if he remembered if the judge addressed the objections at sentencing he responded, "I honestly don't remember. I'm sure he did, because he's very thorough, but I just don't remember." When asked if the movant was held responsible for relevant conduct other than for the single count of conviction, Spivack responded, "I believe - - no. I don't believe he was."

After the plea, Spivack discussed the movant's options. He told the movant he could either appeal or cooperate. According to Spivack, the movant wanted to cooperate so he advised the movant that he would not be able to file an appeal as a practical matter. Spivack acknowledged that legally they could pursue both cooperation and an appeal but the government is unlikely to go through the debriefing process if you are appealing. The government referred Spivack to documents from his file to assist him in testifying about discussions he had with the movant about either appealing or cooperating. Based on the notes from the file, Spivack testified that the movant's case was closed on December 15, 2015, the day after his sentencing, with a notation by his secretary that read, "Open for debriefing." According to Spivack, this is the notation in a filed when a client wants to cooperate. The next page contained a note in Spivack's handwriting that read, "Nothing came of debriefing." This note was dated June 1, 2015, however Spivack testified that he wrote down the wrong year and the note should

4

have been dated June 1, 2016. Spivack explained that the paperwork showed that he "would have sat down with [the movant] and explained to him, look, if you want to cooperate, you can't appeal because the prosecutor is not going to let you do both, and therefore you should just go forward with cooperation." He claimed that the movant agreed to this course of action. Spivack testified that the process of exploring cooperation took about a year.

On cross examination Spivack acknowledged that his memory regarding whether the movant was only held liable for relevant conduct for the single charge of conviction was not correct. He disagreed as to whether this would have been a viable issue for appeal. When he was asked if he met with the movant after sentencing, Spivack responded, "I believe so, yes." He could not recall where he met with the movant stating, "I can't remember exactly, but I believe it was in the lockup." Spivack could not remember attending a debriefing with the movant and the government, but was sure the movant was debriefed. This assertion was apparently based on Spivack's note that nothing came of debriefing.

Spivack did not know when the debriefing occurred and had no notes indicating what was discussed. Spivack did not know when the movant was placed permanently in prison. There was no paperwork in his file indicating that the movant had been transferred for debriefing. There was nothing in his file indicating any activity between the sentencing and the June 1, 2016 note that nothing came of the debriefing.

Spivack was unable to identify with any specificity what information the movant could offer the government in the way of cooperation. However, he testified that the movant's prospects on appeal were not great so he was not giving up anything by talking

5

to the government. Spivack further testified that it was not his practice to suggest cooperation to a client. A discussion about cooperating would have been initiated by the movant. He had no proffer of any concrete information to provide to the government and could not remember what information the movant believed would be valuable to the government.

Spivack testified that he had a specific recollection of meeting with the movant after sentencing. However he had no notes of that conversation, and testified it was his memory that the meeting occurred in lockup. He acknowledged that his memory of where the meeting occurred could be wrong but was certain that he had a conversation with the movant after sentencing.

## IV.  Discussion

The movant raises multiple claims challenging counsel's effectiveness. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire V. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied.  Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the

6

two-prong Strickland standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985).

In the case of ineffective assistance during the punishment phase, prejudice is established if "there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993); United States v. Bartholomew, 974 F.2d 39, 42 (5th Cir. 1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. The court need not address both prongs of the Strickland standard if the complainant has made an insufficient showing on one. Id. at 697. However, a movant must establish that the sentence was increased due to counsel's deficient performance. Glover v. United States, 531 U.S. 198, 203-204 (2001).

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11th Cir. 1994).

**A. Failure File Direct Appeal**

7

In his first claim, the movant contends that counsel failed to file a direct appeal. The law is well settled that counsel's failure to file a direct appeal after being <u>requested</u> to do so by his client results in a <u>per se</u> constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 476-77, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable")(emphasis added); <u>United States v. Stanton</u>, 397 Fed.Appx. 548, 549 (11th Cir. 2010) (unpublished)[2] (<u>quoting</u> <u>Roe v. Flores-Ortega</u>, <u>supra</u>.). The defendant can also demonstrate that his attorney acted unprofessionally by showing that, in the absence of specific instructions from the defendant, there was reason to believe that "a rational defendant would want to appeal." <u>Roe v. Flores-Ortega</u>, 528 U.S. at 478, 480, 120 S.Ct. 1029.

Where the defendant specifically requested that a direct appeal be filed, there is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." <u>Roe v. Flores-Ortega</u>, <u>supra</u> at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed to his attorney a desire to appeal. <u>Id</u>.; <u>see also</u>, <u>McElroy v. United States</u>, 259 Fed.Appx. 262, 263-64 (11th Cir. 2007); <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792 (11th

---

[2]Although unpublished opinions are not binding on this Court, they are persuasive authority. <u>See</u> 11th Cir. R. 36-2.

Cir. 2005).

Even if a defendant contractually waived his right to appeal, counsel may be ineffective for not filing a notice of appeal when directed to by the client because the merits of an appeal are not to be considered when determining whether an out-of-time appeal should be permitted. Gaston v. United States, 237 Fed.Appx. 495, 497 (11th Cir. 2007). The defendant also need not show that there were viable grounds for such an appeal. Martin v. United States, 81 F.3d 1083 (11th Cir. 1996); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); Restrepo v. Kelly, 178 F.3d 634, 641-42 (2d Cir. 1999)(holding that a habeas petitioner alleging ineffective assistance of counsel based on counsel's failure to file a requested notice of appeal need not demonstrate that his defaulted appeal would have succeeded in order to establish prejudice sufficient for habeas relief).

Prejudice is presumed when counsel fails to file a notice of appeal when requested to do so by a client. Gaston v. United States, 237 Fed.Appx. at 496, citing, Roe v. Flores-Ortega, 528 U.S. at 483. Thus, "to satisfy the prejudice prong..., a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." Gomez-Diaz v. United States, 433 F.3d at 792 (citing Roe v. Flores-Ortega, 528 U.S. at 483, 120 S.Ct. 1029).

In the case of an appeal following a guilty plea, however, the defendant is entitled only to an out-of-time appeal of sentencing issues. Flores-Ortega, 528 U.S. at 483. This is so, because "the few grounds upon which the guilty plea may be challenged are not limited to direct appellate review, but instead are more

9

appropriately raised in §2255 proceedings." <u>Montemoino v. United States</u>, 68 F.3d at 417. It should also be noted that "[A] waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues-indeed, it includes a waiver of the right to appeal blatant error." <u>United States v. Howle</u>, 166 F.3d 1166, 1169 (11th Cir. 1999). Moreover, "a vigorous dispute about an issue during the sentencing proceedings does not preserve that issue for appeal when the terms of the appeal waiver do not except it from the waiver." <u>United States v. Bascomb, Jr.</u>, 451 F.3d 1292, 1296 (11th Cir. 2006).

The movant contends that Spivack failed to file a notice of appeal after he asked him to do so. This issue was the subject of the evidentiary hearing. The testimony of the movant is found to be credible regarding his request that counsel file a direct appeal. The testimony of the movant and Spivack are in conflict, however the undersigned finds that the movant demonstrated a better memory of what occurred after he was sentenced, while Spivack's memory was demonstrably lacking.

The movant was candid and presented as an intelligent individual. His memory of the events surrounding his plea and sentencing was clear. According to the movant, he told Spivack that he wanted to appeal his sentence if his sentence included an increase based on the amount of loss associated with all of the alleged fraudulent tax returns. At sentencing the movant was found responsible for other relevant conduct which included the amount of intended loss for the filing of 78 false or fraudulent tax returns. At sentencing, the objections to this enhancement were overruled and the movant's offense level was increased based on the intended loss of $500,000 to $1,000,000. At the evidentiary hearing, Spivack at first testified that the PSI did not include an enhancement for

10

relevant conduct, but on cross examination he was confronted with the PSI and sentencing transcript and acknowledged his memory was incorrect.

There were other portions of Spivack's testimony indicating that his memory of this movant and the case was lacking. He was asked if the movant's guilty plea was easy and responded that he could not remember. He also could not remember if his objections were addressed at sentencing. As to meeting with the movant after sentencing, Spivack believed he had met with him but could not remember where they met. Spivack had no notes from that meeting indicating what was discussed. Spivack testimony regarding the movant cooperating was based entirely upon just a few scant notes from his file. Spivack had no specific recollection of what information the movant may have wanted to provide to the government. He had no recollection of the movant ever meeting with the government for a debriefing, relying solely upon a note in his file that stated "Nothing came of debriefing."[3] There were no notes of when a debriefing occurred or what was discussed. Spivack did not know when the movant was transferred to his permanent prison location and did not know if the movant had ever been brought back from that location for debriefing.

Given the candid testimony of the movant, which the court finds credible despite the argument of the government that a convicted felon should not be believed, the undersigned finds that he did request that Spivack file a direct appeal. In light of this finding, the movant's motion to vacate should be granted and the

---

[3] This note is of some concern as it was dated June 1, 2015. Spivack testified that he made an error in recording the date and that it should have been dated June 1, 2016. The court notes that this is a strange error to be made six months into a year. While this error is not controlling in this decision, it highlights the lack of credence given to the scant notes submitted in support of Spivack's testimony.

11

movant granted an out of time appeal. The Eleventh Circuit has held that when an out-of-time appeal is granted in a criminal case as a remedy in a §2255 proceeding, the remedy should be effected by (1) vacating the criminal judgment; (2) reimposing the same sentence; (3) upon reimposition of that sentence, advising the defendant of all of his rights associated with a criminal appeal; and, (4) advising the defendant that the time for filing the notice of appeal from the reimposed sentence is fourteen (14) days. See United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000).

## B. Remaining Claims

Regarding movant's remaining claims, they should be dismissed without prejudice to the filing of a §2255 motion once the movant's conviction becomes final after resolution of his direct appeal. See McIver v. United States, 307 F.3d 1327, 1332, fn2 (11th Cir. 2002).[4] This is true because an order granting a §2255 petition, and

---

[4] In McIver, the Eleventh Circuit reasoned that dismissal was appropriate because:

> [T]here are significant inefficiencies to any other approach. If the district court were to deny a collateral claim under a different standard of review than applies on direct appeal, then the defendant might be entitled to relitigate the same claim in his reinstated direct appeal. Moreover, both the government and the petitioner could pursue collateral appellate proceedings on other claims that the outcome of the direct appeal might render unnecessary. Although in Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), we instructed district courts to resolve all claims in petitions brought pursuant to 28 U.S.C. §2254, equally clear precedent of this Court directs that collateral claims should not be entertained while a direct appeal is pending. See Welsh v. United States, 404 F.2d 333 (5th Cir. 1968) (binding authority in the Eleventh Circuit under Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*)); see also Rules Governing 2255 Proceedings, Rule 5, advisory committee note; United States v. Cook, 997 F.2d 1312, 1319 (10th Cir. 1993); United States v. Gordon, 634 F.2d 638, 638-39 (1st Cir. 1980); United States v. Davis, 604 F.2d 474, 484 (7th Cir. 1979); Jack v. United States, 435 F.2d 317, 318 (9th Cir. 1970); Womack v. United States, 395 F.2d 630, 631 (D.C. Cir. 1968); Masters v. Eide, 353 F.2d 517 (8th Cir.1965). Once the court has determined that the petitioner is entitled to a direct appeal, such an appeal is "pending" for all relevant policy purposes. Id.

reimposing the same sentence, "resets to zero the counter of collateral attacks pursued," and therefore "does not render subsequent collateral proceedings second or successive." McIver v. U.S., 307 F.3d 1327, 1332 (11th Cir. 2002)(citations omitted).

### V.  Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts. A §2255 movant seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). See 28 U.S.C. §2253(c)(1); Harbison v. Bell, 556 U.S. 180, 129 S.Ct. 1481 (2009).

This Court should issue a certificate of appealability only if the applicant makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Miller-El v. Cockrell, 537 U.S. 322, 336-37, 123 S.Ct. 1029, 1043-1044, 154 L.Ed.2d 931 (2003) (citations and quotation marks omitted); see also Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 1606, 146 L.Ed.2d 542 (2000); Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001).

Moreover, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. at 484. After review of the record in this case, the Court finds that a certificate of appealability is not warranted and should be denied in this case. Notwithstanding, if movant does not agree, he may bring this argument to the attention of the Chief Judge in objections.

### **VII. Conclusion**

It is therefore recommended that this motion to vacate be GRANTED solely as to movant's claim that counsel failed to file a requested direct appeal, that the criminal judgment under attack here be vacated, that the same sentence reimposed, and that the movant be permitted to file a direct appeal, as directed by the procedures set forth in United States v. Phillips, 225 F.3d 1198, 1200-01 (11 Cir. 2000). The law is clear that where counsel "acts contrary to his client's wishes or fails to fulfill his duty to attempt to determine his client's wishes," prejudice is presumed, and the defendant "is entitled to an out-of-time appeal, regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver." See Gomez-Diaz v. United States, 433 F.3d at 793; see also, Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); Roe v. Flores-Ortega, 528 U.S. at 483.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 20th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

cc:
Randee Golder
Post Office Box 243756
Boynton Beach, FL 33424-3756

Roger Cruz
United States Attorney's Office
99 Randee Golder
Post Office Box 243756
Boynton Beach, FL 33424-3756